## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDA MARTIN,
    436 E. 129th Street
    Los Angeles, CA 90061

          Plaintiff,

  v.

FEDERAL BUREAU OF INVESTIGATION,
    935 Pennsylvania Ave., NW
    Washington, DC 20535, and

CHRISTOPHER WRAY, in his official
capacity as Director of the Federal Bureau
of Investigation,
    935 Pennsylvania Ave., NW
    Washington, DC 20535

          Defendants.

**Civil Case No. 1:23-cv-00618**

## PLAINTIFF'S CLASS-ACTION COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

This class-action civil-rights lawsuit seeks to vindicate the due process rights of

Plaintiff Linda Martin and a nationwide class of individuals who have been, or will be,

sent a Notice of Seizure of Property and Initiation of Administrative Forfeiture

Proceedings (a "Notice") by Defendant Federal Bureau of Investigation (FBI). The FBI

sends these Notices at a critical time when the recipient must decide how to defend

their interest in the seized property, and yet the Notices fail to inform the recipient what—if anything—the FBI thinks they have done wrong.

That is exactly what happened to Plaintiff Linda Martin nearly two years ago. After the FBI seized $40,200 of cash savings for a down payment on a family home from her safe deposit box at U.S. Private Vaults (USPV), it sent her a Notice. The Notice accused her of no crime and stated no facts connecting her to any crime. Instead, the Notice alluded to nearly twenty federal forfeiture statutes that broadly incorporate hundreds of federal crimes (if not more). Left in the dark, Linda filed only a Petition for Remission (a "Petition") that asked the FBI to return her property. Today, the FBI still has Linda's property, wants to forfeit it, and has not told her why.

It is no surprise that Linda's Notice failed to tell her why the FBI wanted to forfeit her property. The FBI seized the contents of her and hundreds of other USPV customers' safe deposit boxes while executing a seizure warrant against USPV, the company. But the FBI told the judge issuing the warrant that it would not search customer boxes for criminal evidence, and the warrant expressly did not authorize such a search. Worse yet, the FBI has testified under oath that, even before applying for that warrant, it planned to seize and try to forfeit the contents of *every* customer's box, so long as its contents exceeded the FBI's $5,000 minimum to pursue forfeiture. So, the FBI could not tell Linda what she did wrong because the FBI decided to seize and try to forfeit her property before it knew who she was or anything about her, except that there was enough cash in her deposit box to make it worthwhile for the FBI to try to forfeit it.

2

Linda's ordeal is not unique. The FBI issues hundreds, if not thousands, of similarly paltry Notices to unsuspecting property owners each year. And, like Linda's Notice, those Notices fail to tell recipients the specific legal or factual reasons the FBI seized and wants to forfeit their property.

The FBI's Notices are unconstitutional. Due process under the Fifth Amendment to the United States Constitution means that people ensnared in forfeiture proceedings are entitled to information sufficient to give them an opportunity to respond meaningfully and effectively to the FBI's Notice. At the very least, due process requires the FBI's Notices to identify the specific statute allegedly violated and the specific facts that it thinks justify seizing and trying to forfeit property supposedly connected to that crime. But the FBI will continue sending out its barebones Notices, like Linda's, unless and until this Court orders it to abide by its minimal constitutional duty.

Linda has therefore filed this lawsuit for declaratory and injunctive relief against the FBI and its Director Christopher Wray, solely in his official capacity, on behalf of herself and a nationwide class to vindicate their due process rights. Linda, for herself and for the putative class, asks this Court to enter an order declaring the FBI's Notices unconstitutional; enjoining the FBI from forfeiting property belonging to Linda and the putative class without first providing adequate notice; and, if the FBI fails to provide that notice, directing the FBI to return their property without condition or delay.

## JURISDICTION AND VENUE

1.     Linda Martin brings her class-action Fifth Amendment claim under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28

U.S.C. §§ 2201, 2202, as well as directly under the United States Constitution. To remedy the FBI's violation of their constitutional rights, Linda seeks declaratory and injunctive relief requiring the FBI to send her and the members of the putative class constitutionally adequate notice before it may proceed with forfeiture of their property, or otherwise to return their property.

2.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as Linda's claims arise under federal law.

3.      Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(e)(1), because the Notices received by Linda and members of the putative class were generated in, and sent from, the FBI's headquarters in Washington, D.C.

## PARTIES

4.      Plaintiff Linda Martin is a United States citizen and resident of Los Angeles, California. At USPV's Beverly Hills facility, she rented a safe deposit box in which she stored $40,200 cash that she and her husband had saved for a down payment on a family home. After it seized those savings on March 22, 2021, the FBI sent Linda a Notice on June 10, 2021, to which she responded by filing a Petition with the FBI on June 18, 2021. To date, the FBI has neither returned the savings it took from Linda's safe deposit box nor told her the factual or legal bases the FBI believes exist for seizing and attempting to forfeit them.

5.      Defendant FBI is a federal domestic intelligence and security agency, within the U.S. Department of Justice, and is responsible for investigating and enforcing

various federal crimes. As such, it is subject to the limitations imposed by the U.S.

Constitution, including, as relevant here, the Fifth Amendment's Due Process Clause.

6.    Defendant Christopher A. Wray is the Director of the FBI. He is

responsible for supervising and directing the FBI's operations, including its policies,

practices, and procedures regarding administrative forfeiture generally and regarding

the FBI's Notices specifically. He is sued only in his official capacity.

## FACTUAL ALLEGATIONS

### *Linda Lawfully Rents a Safe Deposit Box at USPV*

7.    Linda was looking for a safe, secure location to store cash that she and her

husband had saved for a down payment on a family home.

8.    She was reluctant to deposit the cash with her local bank, afraid that she

might be tempted to dip into those savings unnecessarily via a bank card. She was

looking for cold storage, to keep the cash safe and secure, and from being spent easily.

But the local bank did not have any safe deposit boxes available.

9.    After being turned away from the bank, Linda searched for information

about safe deposit boxes on Google and learned about USPV.

10.    USPV was a private safe deposit box company that maintained a location

in Beverly Hills, California.

11.    The store's location, across town from her home, appealed to Linda

because it would be less convenient to access and spend the savings.

12.    USPV also had a website that provided information to consumers about,

for example, the company's vaults, biometric security features, and insurance.

13.   USPV advertised its services on television, Facebook, Twitter, and Yelp.

14.   USPV was a member of the Beverly Hills Chamber of Commerce.

15.   Having done her research, Linda felt that USPV was a safe, secure location to store the savings, so she rented a safe deposit box there.

*The FBI Decides to Seize Linda's and Other USPV Box Renters' Property for Forfeiture*

*Before It Seeks a Warrant Against USPV*

16.   On March 17, 2021, the FBI obtained a warrant from a federal magistrate judge to seize USPV's "nest," a relatively worthless superstructure that houses individual safe deposit boxes.

17.   In or around late summer and fall of 2020, the FBI began planning to seek that seizure warrant for USPV's nest.

18.   Also in late summer and fall of 2020, the FBI determined that its Los Angeles field office had the capacity to process administrative forfeitures of hundreds of individual safe deposit boxes at USPV.

19.   Special Agent Jessie Murray, who leads that forfeiture unit, testified that she confirmed the field office could handle a "large-scale seizure" because they had "a large complement of asset forfeiture employees."

20.   Before applying for the warrant, federal agents suspected there would be criminal evidence in some safe deposit boxes at USPV.

21.   One federal agent testified that the FBI took over the USPV investigation specifically because the FBI's jurisdiction was "larger," meaning it covered "not just drug crimes, but other crimes" they may have been committed by "many box holders."

22.     In applying for both its seizure warrant and a related search warrant, the FBI did not request to search any individual safe deposit box for criminal evidence.

23.     The FBI instead told the magistrate it wanted only to "inventory" customer boxes, even though that was against FBI policy, which advised seeking a criminal search warrant whenever agents think an "inventory search would also yield items of evidence or contraband."

24.     The FBI told the magistrate judge that its "inventory" would extend no further than necessary to determine ownership of the box and to protect the FBI from claims of theft or loss.

25.     A limited inventory to determine ownership of the boxes would have been consistent with FBI policy, as well as the warrant application and warrant itself.

26.     The USPV seizure warrant expressly did "not authorize a criminal search or seizure of the contents of the safety deposit boxes," but rather directed agents to "follow their written inventory policies to protect their agencies and the contents of the boxes" and to "inspect the contents of the boxes" only to "identify their owners in order to notify them so that they can claim their property."

27.     The FBI failed to tell the magistrate that, even before applying for the warrant, the FBI had already decided for itself that it had probable cause to seize and forfeit the contents of every individual safe deposit box at USPV.

28.     Special Agent Murray testified that she reviewed the warrant affidavit and "made a determination that there was probable cause to proceed on assets seized in the investigation from U.S. Private Vaults," including "the contents of the boxes."

29.     The FBI failed to tell the magistrate that it had decided to try to forfeit the contents of any individual safe deposit box, including cash, worth more than the FBI's minimum threshold of $5,000.

30.     The FBI has admitted it did not tell the magistrate about its plans.

31.     Thus, even before it applied for a warrant against USPV or knew anything about the contents or owners of individual boxes there, the FBI had already decided to seize and try to forfeit the contents of Linda's and hundreds of other deposit boxes.

*The FBI Exceeds the Scope of Its Warrant Against USPV to Search and Seize the Contents of Hundreds of Individual Safe Deposit Boxes*

32.     On March 22, 2021, federal investigative agents executed the warrant to seize certain business property belonging to USPV at USPV's Beverly Hills location.

33.     Over the course of four days in March 2021, the FBI removed and searched more than 700 individual safe deposit boxes at USPV.

34.     The FBI's "inventory" of the deposit boxes was haphazard, did not comport with FBI policy, and in fact went well beyond a mere "inventory."

35.     Agents continued searching boxes for criminal evidence after discovering evidence of who owned the box, such as executor's letters taped to the insides of boxes.

36.     The FBI created specialized forms where agents could capture any inculpatory evidence.

37.     The FBI advised its agents that copies of the inventories of individual safe deposit boxes would be provided to the FBI's asset forfeiture unit.

38.     The FBI directed its agents to place any cash above $5,000 into evidence bags uncounted and instructed them on how to spot signs that cash had illegal origins.

39.     The FBI arranged for canine units to be on the scene to sniff any cash above $5,000 that was taken from individual boxes. One federal agent testified that a canine alert to cash would serve no purpose in an inventory but could help with forfeiting the seized property.

40.     Though expressly not authorized by the warrant it was executing against USPV, the FBI ultimately searched, seized, and would try to forfeit the contents of over 400 individual safe deposit boxes, including Linda's.

*After Seizing Her Property, the FBI Sends Linda One of Its Boilerplate, Inadequate Notices*

41.     The FBI seized $40,200 cash savings from Linda's USPV safe deposit box.

42.     On or around June 10, 2021, the FBI sent Linda a Notice. A true and correct copy of that Notice is attached to this Complaint as Exhibit A.

43.     That Notice came to Linda from Washington, D.C., postal zip code 20535, and bore a unique "Notice Letter ID." It identified Linda's property as "$40,200.00 U.S. Currency from U.S. Private Vault Box #1810" and assigned it an "Asset ID Number."

44.     The Notice stated, "The asset(s) referenced in this notice letter were seized on March 22, 2021 by the FBI at Beverly Hills, California."

45.     The Notice described its "Forfeiture Authority": "The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(C) and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9."

46.     Title 18, Section 981(a)(1)(C) alone incorporates, directly and indirectly, hundreds of federal crimes covering a wide variety of conduct.

47.     For example, § 981(a)(1)(C) makes forfeitable "[a]ny property" that "constitutes or is derived from proceeds traceable to . . . any offense [or conspiracy to commit an offense] constituting 'specified unlawful activity'" under 18 U.S.C. § 1956(c)(7). Section 1956(c)(7) provides examples of "specified unlawful activity" across seven subsections ("A" to "G") that contain more than 1,200 words. Its subsection (D) alone is nearly 800 words long and refers to more than 70 federal statutes on widely variable topics, such as copyright infringement, the variola virus, "border tunnels," espionage, "property mortgaged or pledged to farm credit agencies," hostage taking, child pornography, violence against maritime fixed platforms, "receiving military-type training from a foreign terrorist organization," the Tariff Act of 1930, and prohibited business dealings with North Korea.

48.     The Notice provided no other factual or legal reasons why the FBI seized and wanted to forfeit Linda's property.

*The FBI's Notice Directs Linda to Respond by Filing a Petition or a Claim*

49.     Although the Notice left Linda to guess what possible reasons the FBI had for seizing and trying to forfeit her property, the Notice gave her two ways to respond: Filing a Petition or filing a Claim.

50.     The Notice described Petitions and Claims in confusing language, which Linda did her best to understand.

51.     The decision whether to file a Petition or a Claim is consequential because Petitions and Claims initiate very different paths for someone who receives a Notice.

52.     Filing a Petition concedes forfeiture of the seized property and asks for its return only as a matter of administrative grace. The FBI decides Petitions in internal administrative forfeiture proceedings. Those proceedings have no neutral decisionmaker; standard of decision; opportunity for a hearing; internal review, aside from a request for reconsideration decided by another FBI employee; or opportunity for judicial review. The FBI's Notices identify the FBI's "Unit Chief, Legal Forfeiture Unit, Office of the General Counsel" as the official who rules on Petitions, but they do not mention the lack of safeguards in the proceedings that produce and insulate the rulings.

53.     Filing a Claim causes the FBI either to return the property or to suspend its administrative forfeiture proceedings and refer the Claim to the appropriate United States Attorney's Office (USAO) to decide whether to file a complaint for forfeiture in the appropriate United States District Court.

54.     If the USAO does not file a complaint for forfeiture within a prescribed period of time, then the government must promptly release and return the property.

55.     If the USAO files a complaint for forfeiture, the government bears the burden of proof to forfeit the property in a civil judicial proceeding, which requires proving by a preponderance of the evidence, among other things, a substantial connection between the property and a criminal offense. The ultimate decisionmaker in those proceedings is a federal judge whose decision is subject to still further judicial review in the relevant court of appeals.

*Left in the Dark About the Nature of the FBI's Proceedings Against Her, Linda Files a Petition*

56.     Linda filed her Petition on June 18, 2021.

57.     Linda's Petition provided her contact information and identified her as an "innocent owner" of the $40,200 savings seized from her safe deposit box.

58.     Linda's Petition further stated that she "did not know of the conduct giving rise to the forfeiture" and was not "aware of any activity that may have prompted the forfeiture of the property."

59.     No one filed a Claim concerning Linda's property, which also has not otherwise been made the subject of a complaint for forfeiture.

60.     When Linda filed her Petition, she did not know (because the Notice did not inform her) that the FBI had taken and wanted to keep her property even though it did not suspect her of committing any crime or any other wrongdoing.

61.     When Linda filed her Petition, she did not know (because the Notice did not inform her) that the FBI had taken and wanted to keep her property even though it knew no specific facts connecting Linda personally to any criminal wrongdoing.

62.     When Linda filed her Petition, she did not know (because the Notice did not inform her) that the FBI had taken and wanted to keep her property even though it knew no specific facts about her except that she had stored more than $5,000 cash in her safe deposit box at USPV.

63.     When Linda filed her Petition, she did not know (because the Notice did not inform her) that the FBI had taken and wanted to keep her property pursuant to a preordained plan that the agency developed before it even knew who she was.

12

64.     When Linda filed her Petition, she did not know (because the Notice did not inform her) that the FBI had taken and wanted to keep her property pursuant to its preordained plan but would, if Linda filed a Petition, have unlimited time and discretion to develop legal and factual theories to justify forfeiting her property.

65.     Thus left in the dark by the FBI's Notice, Linda tried her best to understand its confusing language and directions. She saw references to the "return" of property only where the Notice invited her to file a Petition, so that is what she did.

*Almost Two Years After Filing Her Petition, Linda Has Learned Nothing More About Why the*
*FBI Seized and Wants to Forfeit Her Property*

66.     Linda inquired about the status of her Petition on multiple occasions.

67.     The FBI responded via letter on July 6, 2022—more than a year after Linda filed the Petition. A true and correct copy of that letter is attached to this Complaint as Exhibit B.

68.     The FBI claimed it needed to "conduct an investigation into the merits of [Linda's] petition" and directed Linda to "provide documentation in support of the significant amount of cash you are requesting a pardon for that was recovered from U.S. Private Vaults safe deposit box #1810," such as "evidence of legitimate employment, pay stubs, W-2 forms, tax returns, etc."

69.     Linda submitted additional documents to the FBI.

70.     The FBI said nothing else about Linda's Petition until it sent an email on January 12, 2023. A true and correct copy of that email from FBI Special Agent Jessie Murray is attached to this Complaint as Exhibit C.

13

71.     Special Agent Murray stated Linda's cash was "still pending forfeiture" and that "[a]ll documents" she had submitted were "included in the petition matter."

72.     Special Agent Murray stated there were "currently no forms to be issued that would cause release of the funds" to Linda, but that "[o]nce the property has been forfeited, the FBI Legal Forfeiture Unit in Washington, DC will make a determination as to pending petitions."

73.     To date, Linda still does not have her property or any specific legal or factual reasons why the FBI seized and continues to try to forfeit it.

### INJURIES TO LINDA AND MEMBERS OF THE PUTATIVE CLASS

74.     Linda's Notice failed to give her the specific legal and factual reasons the FBI believed justify seizing and forfeiting her property.

75.     A review of FBI Notices sent to other owners of property targeted for forfeiture show the Notices are similarly unconstitutional and legally deficient for failing to specify the legal or factual reasons for seizing or forfeiting the property.

76.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to review and try to understand a confusing legal document without key context explaining how that document was connected to them.

77.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without any indication of what—if anything—the FBI thought they personally did wrong.

14

78.    Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without being able to understand the true nature of the government's proceedings against them and their property.

79.    Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without being able to investigate what, if anything, the FBI thought they, or anyone, had done wrong to justify seizing and forfeiting their property.

80.    Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without any indication of what type or amount of evidence, if any, could rebut or explain the FBI's undisclosed legal or factual bases for seizing and forfeiting their property.

81.    Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without any indication where or how to marshal evidence of their own which might rebut the FBI's undisclosed legal or factual bases for seizing and forfeiting their property.

82.    Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without any indication of whether

15

evidence they might submit would bolster, undermine, or otherwise effect the FBI's undisclosed legal or factual bases for seizing and forfeiting their property.

83. Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without any indication whether evidence they might submit to the FBI would potentially incriminate themselves or would give the FBI reasons to seize and try to forfeit their property.

84. Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond before the FBI had committed itself to any legal or factual theory for seizing and forfeiting their property, meaning the FBI could retroactively develop such legal and factual theories from information Linda and members of the putative class submitted to get their property back from the FBI.

85. Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without being able to investigate whether there were any defenses or other legal barriers to the FBI's undisclosed legal or factual bases for seizing and forfeiting their property.

86. Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without being able to identify and explain any mistaken legal or factual bases for the seizure and attempted forfeiture.

87.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without the opportunity to assess meaningfully and intelligently whether they should obtain legal counsel.

88.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by being forced to decide how to respond without the opportunity to assess meaningfully and intelligently whether filing a Petition, a Claim, or simply defaulting would best serve their interests.

89.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by losing the opportunity to respond meaningfully and effectively to the FBI's attempt to subject them to forfeiture proceedings and to deprive them of their property.

90.     Because the Notices did not give Linda or the members of the putative class specific legal or factual reasons for seizing or forfeiting their property, they were injured by undergoing forfeiture proceedings in violation of the Fifth Amendment.

91.     The FBI's issuance of the unconstitutional and legally deficient Notices, and the forfeiture proceedings that followed and continue to follow, constitute an ongoing and irreparable injury to Linda and to members of the putative class.

## CLASS-ACTION ALLEGATIONS

92.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1-91.

93.    Linda seeks to maintain this action on behalf of herself and all others similarly situated under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

94.    Linda proposes the following class definition: All persons (1) who received a Notice from the FBI during the past six years or who will receive a Notice from the FBI in the future; (2) whose property has not been returned to them; and (3) whose property has not been made subject of a complaint for forfeiture in a United States District Court (the "Proposed Class").

95.    The Proposed Class includes Linda.

96.    The Proposed Class satisfies all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

97.    The Proposed Class satisfies Rule 23(a)(1) because it is sufficiently numerous that joinder of all putative members in a single action is impracticable.

98.    On information and belief, the FBI sends hundreds or thousands of Notices per year.

99.    Each person who received a Notice in the past six years is a potential member of the Proposed Class, so long as their property has neither been returned nor made subject of a complaint for forfeiture.

100.    Future recipients of Notices sent by the FBI will be members of the Proposed Class, until their property is either returned or made subject of a complaint for forfeiture.

101.    On information and belief, there are hundreds, and perhaps thousands, of members of the Proposed Class.

18

102.    The Proposed Class satisfies Rule 23(a)(2) because it presents questions of law and fact common to the Proposed Class, resolution of which will not require individualized determinations of the circumstances of any particular member of the Proposed Class.

103.    It is a common question whether the Notices fail to include the specific factual reasons for the FBI's seizure and proposed forfeiture of property identified in the Notices sent to members of the Proposed Class.

104.    It is a common question whether the Notices fail to include the specific legal basis for the FBI's seizure and proposed forfeiture of property identified in the Notices sent to members of the Proposed Class.

105.    It is a common question whether the Notices, therefore, violate the due process rights of the members of the Proposed Class by denying them the specific legal and factual reasons for the underlying seizure and proposed forfeiture of their property at a critical time when they must decide how to respond to the Notice to defend themselves and their property.

106.    The Proposed Class satisfies Rule 23(a)(3) because Linda's claims are typical of the claims of the members of the Proposed Class.

107.    Linda alleges she, like the members of the Proposed Class, received a Notice from the FBI.

108.    Linda alleges that the Notices she and the members of the Proposed Class received failed to inform them of the specific legal and factual reasons the FBI believed justify seizing and trying to forfeit their property.

109.    Linda alleges that it violates due process for the Notices not to inform her and members of the Proposed Class of the FBI's specific legal and factual reasons for seizing and trying to forfeit their property at the critical time when they must decide how to respond to the Notices to defend their rights.

110.    Linda, for herself and for the members of the Proposed Class, requests declaratory and injunctive relief against the FBI to remedy the due process violations.

111.    The Proposed Class satisfies Rule 23(a)(4) because Linda and her attorneys will fairly and adequately protect the interests of the class.

112.    Linda's interests are aligned with those of the members of the Proposed Class.

113.    Linda does not have any conflict of interests concerning the members of the Proposed Class.

114.    Linda, for herself and for the members of the Proposed Class, seeks to remedy the violation of their due process rights not to be subjected to government forfeiture proceedings without being notified of the specific legal and factual bases the FBI believes justify seizing and trying to forfeit their property at the critical time when they must decide how to respond to the Notices to defend their rights.

115.    Linda and the members of the Proposed Class are ably represented *pro bono* by the Institute for Justice (IJ). A non-profit, public-interest law firm founded in 1991, IJ has litigated constitutional issues nationwide for more than 30 years. That includes IJ's victorious class-action litigation in federal court against Philadelphia (*Sourovelis v. City of Philadelphia*, No. CV 14-4687, 2021 WL 344598, at *1 (E.D. Pa. Jan. 28,

20

2021) (appointing IJ as Class Counsel and entering consent decree in challenge to city's civil forfeiture practices)); New York City (*Cho v. City of New York*, No. 1:16-cv-07961, ECF 111 (S.D.N.Y. Oct. 2, 2020) (enforcing settlement to end city's practice extracting agreements with coercive property seizures)); and Pagedale, Missouri (*Whitner v. City of Pagedale*, No. 4:15-cv-01655, ECF 116 (E.D. Mo. May 21, 2018) (approving consent decree prohibiting abusive ticketing practices)). Furthermore, IJ has particular expertise litigating to defend private property rights and to challenge abusive civil forfeiture practices, such as IJ's ongoing class actions and putative class actions in federal court. *See, e.g.*, *Snitko v. United States of America*, 2:21-cv-04405-RGK-MAR (C.D. Cal. Oct. 12, 2021) (certifying modified class of USPV box renters challenging government's retention of records seized from their boxes); *Sparger-Withers v. Taylor, et al.*, No. 1:21-cv-02824-JRS-MG (S.D. Ind. Sept. 14, 2022) (certifying class and denying motion to dismiss) ("[T]he Court has no qualms in finding that the Institute for Justice has the experience and resources ably to represent [Plaintiffs] in this litigation."); *Brown v. TSA, et al.*, No. 2:20-cv-00064-MJH-LPL (W.D. Pa. Mar. 30, 2021) (denying motion to dismiss class claims challenging TSA and DEA's seizures of currency without reasonable suspicion).

116.    The Proposed Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure because it meets the requirements of that Rule.

117.    The FBI has acted or refused to act in a way that applies generally to the Proposed Class. It has sent, or will send, them all Notices without the specific legal or factual bases the FBI believes justify seizing and trying to forfeit their property. The FBI also has instituted, or will institute, forfeiture proceedings against their property

without first providing them the specific legal or factual bases for seizing and trying to forfeit their property.

118.    The FBI's failure to act—its failure to include the specific legal and factual bases for its seizure and proposed forfeiture in the Notice—is common to, and applies generally to, the members of the Proposed Class.

119.    Final injunctive and declaratory relief is appropriate respecting the Proposed Class as a whole.

120.    The Proposed Class is ascertainable from the FBI's records, which include, among other things, records of where and to whom the FBI sent Notices in the past six years, as well as the contact information for members of the Proposed Class.

## LEGAL CLAIMS

121.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1-91 and ¶¶ 93-120.

122.    Counts I and II below seek to vindicate Linda's and the Proposed Class's Fifth Amendment rights to due process.

123.    The Fifth Amendment to the United States Constitution provides in relevant part, "No person shall . . . be deprived of life, liberty, or property, without due process of law."

124.    The Fifth Amendment protects Linda's and the Proposed Class's due process rights to notice and an opportunity to respond meaningfully and effectively to government attempts to deprive them of liberty or property interests.

125.    The Fifth Amendment therefore protects each member of the Proposed Class's due process right to be informed of the government's specific legal and factual reasons for seizing and trying to forfeit their property, and to be so informed at the critical time when they receive the Notice and must decide how to respond.

126.    To prevail on a procedural due process claim under the Fifth Amendment, a plaintiff must prove (1) the deprivation of a protected liberty or property interest; (2) by the government; and (3) without the process that is due under the Fifth Amendment.

127.    Linda and the Proposed Class satisfy the first element of a procedural due process claim. Linda has a protected interest in the cash savings the FBI seized from her safe deposit box, and members of the Proposed Class have protected interests in the property covered by the Notices they received from the FBI. Linda and the Proposed Class have protected interests in not being subjected to forfeiture proceedings and their attendant burdens, costs, and risks.

128.    Linda and the Proposed Class satisfy the second element of a procedural due process claim. The FBI is a federal government agency and has deprived, or will deprive, Linda and members of the Proposed Class of their protected interests in their seized property and in not being subjected to forfeiture proceedings and their attendant burdens, costs, and risks.

129.    As alleged further in Counts I and II below, Linda and the Proposed Class satisfy the third element of a procedural due process claim, which depends upon a balancing of three factors from the Supreme Court decision *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) the private interest affected; (2) the risk of an erroneous deprivation of

such interest through current procedures, and the probable value of additional or substitute procedures; and (3) the government's interest, including the fiscal and administrative burdens of the additional or substitute procedures.

**INDIVIDUAL CLAIM**
**COUNT I: On Linda's Behalf**
**Linda's Notice Violates the Fifth Amendment**

130.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1-91, ¶¶ 93-120, and ¶¶ 122-129.

131.    The private interest at stake for Linda is substantial.

132.    The FBI seized and is trying to forfeit Linda's $40,200 savings for a family home.

133.    Linda faced not only the loss of those savings, but also the burdens, costs, and risks of forfeiture proceedings that would result from her responding to the Notice.

134.    The FBI's current Notice procedures create a substantial and unconstitutionally large risk of erroneous deprivation of Linda's protected interests.

135.    The Notice the FBI sent to Linda did not provide her with the specific legal or factual reasons the FBI believes justify seizing or forfeiting her property.

136.    Without the specific legal and factual bases for the FBI's seizing and trying to forfeit her property, Linda could not understand the nature of the government's proceedings against her and her property and could not even begin to prepare an effective and meaningful response to defend her rights. This creates a substantial and unconstitutional risk that Linda will be erroneously deprived of her protected interests.

24

137.    With the specific legal and factual bases for the FBI's seizing and trying to forfeit her property, Linda would have better understood the nature of the government's proceedings against her and her property and could have begun to prepare an effective and meaningful response to defend her rights. This would substantially reduce the risk that Linda is erroneously deprived of her protected interests.

138.    It would be a small fiscal and administrative burden on the FBI to include in Linda's Notice the specific legal and factual bases for seizing and trying to forfeit her property. The FBI already has that information in its possession, custody, and control. All the FBI needs to do is include that information in the Notice, which the FBI is already required by law to send to Linda.

139.    The government's interest in allowing the FBI to proceed with forfeiting property under its current Notice procedure is small. For example, requiring the FBI to state the specific legal and factual bases for seizing and trying to forfeit Linda's property would not undermine its ability or power to proceed with any meritorious forfeiture. Nor would it impose a significant fiscal or administrative burden.

140.    Thus, the FBI's Notice failed to provide Linda with the process due under the Fifth Amendment—notice and a meaningful opportunity to respond to the government's attempt to deprive her of her protected interests.

141.    As a result, Linda respectfully requests that the Court declare that the Notice the FBI sent her violates her right to due process under the Fifth Amendment.

142.    The constitutional violation by the FBI's Notice constitutes a past, present, and ongoing irreparable injury to Linda.

143.    Linda therefore respectfully requests that the Court enjoin the FBI from proceeding with the forfeiture of Linda's property unless and until the FBI resends her a notice containing the specific legal and factual bases the FBI believes justify seizing and forfeiting her property. In the alternative, if the FBI does not provide Linda with such corrected notice, Linda respectfully requests that the Court order the FBI to return her property without condition or delay.

## CLASS CLAIM
### COUNT II: On Behalf of the Proposed Class
### The Notices Violate the Fifth Amendment

144.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1-91, ¶¶ 93-120, and ¶¶ 122-129.

145.    The private interest at stake for members of the Proposed Class is substantial.

146.    The FBI seized and is trying to forfeit, or will seize and try to forfeit, private property from each member of the Proposed Class.

147.    The Proposed Class faced, or will face, not only the loss of their property, but also the burdens, costs, and risks of forfeiture proceedings that would result from responding to the Notices.

148.    The FBI's current Notice procedures create a substantial and unconstitutionally large risk of erroneous deprivation of the Proposed Class's protected interests.

26

149.    Like Linda's Notice, the Notices the FBI sent to, or will send to, the Proposed Class do not provide the Proposed Class with the specific legal or factual reasons the FBI believes justify seizing or forfeiting their property.

150.    Without the specific legal and factual bases for the FBI's seizing and trying to forfeit their property, the members of the Proposed Class could not, or will not be able to, understand the nature of the government's proceedings against them and their property and could not, or will not be able to, even begin to prepare an effective and meaningful response to defend their rights. This creates a substantial and unconstitutional risk that members of the Proposed Class will be erroneously deprived of their protected interests.

151.    With the specific legal and factual bases for the FBI's seizing and trying to forfeit their property, the members of the Proposed Class would be better able to understand the nature of the government's proceedings against them and their property and could have begun, or could begin, to prepare an effective and meaningful response to defend their rights. This would substantially reduce the risk that members of the Proposed Class are erroneously deprived of their protected interests.

152.    It would be a small fiscal and administrative burden on the FBI to include in its Notices the specific legal and factual bases for seizing and trying to forfeit property. The FBI already has that information in its possession, custody, and control. All the FBI needs to do is include the information in the Notices, which the FBI is already required by law to send.

27

153.    The government's interest in allowing the FBI to proceed with forfeiting property under its current Notice procedure is small. Requiring the FBI to state the specific legal and factual bases for seizing and trying to forfeit property belonging to any member of the Proposed Class does not undermine the FBI's or the government's ability or power to proceed with any meritorious forfeitures. Nor would it impose a significant fiscal or administrative burden.

154.    Thus, the FBI's Notices failed, or will fail, to provide the Proposed Class with the process due under the Fifth Amendment—notice and a meaningful opportunity to respond to the government's attempt to deprive them of their protected interests.

155.    As a result, Linda and the Proposed Class respectfully request that the Court declare that the FBI's Notices violate their rights to due process under the Fifth Amendment.

156.    The constitutional violations by the FBI's Notices constitute a past, present, and ongoing irreparable injury to Linda and to the Proposed Class.

157.    Linda and the Proposed Class therefore respectfully request that the Court enjoin the FBI from proceeding with the forfeiture of any property covered by a Notice sent to members of the Proposed Class unless and until the FBI resends them notices containing the specific legal and factual reasons the FBI believes justify seizing and forfeiting their property. In the alternative, if the FBI does not provide members of the Proposed Class with such corrected notice, Linda and the Proposed Class respectfully

request that the Court order the FBI to return to members of the Proposed Class the property covered by their respective Notices without condition or delay.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2) on behalf of all people who (1) received a Notice from the FBI in the past six years or will receive a Notice in the future, (2) have yet to have their property returned, and (3) whose property has not been made subject of a complaint for forfeiture in a United States District Court.

B.      Designate Linda as Class Representative for the Proposed Class.

C.      Designate Linda's counsel of record as Class Counsel for the Proposed Class.

D.      Issue a declaratory judgment that the Notice the FBI sent to Linda violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

E.      Issue a class-wide declaratory judgment that the FBI's Notices violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

F.      Issue an injunction enjoining the FBI from proceeding with the forfeiture of Linda's property unless and until the FBI resends her a notice containing the specific legal and factual grounds the FBI believes justify seizing and forfeiting her property. In the alternative, if the FBI does not provide Linda with such corrected notice, issue an injunction requiring the FBI to return her property without condition or delay.

G.    Issue a class-wide injunction enjoining the FBI from proceeding with the forfeiture of any property covered by a Notice sent to members of the Proposed Class unless and until the FBI resends them notices containing the specific legal and factual grounds the FBI believes justify seizing and forfeiting their property. In the alternative, if the FBI does not provide members of the Proposed Class with such corrected notice, issue a class-wide injunction requiring the FBI to return to members of the Proposed Class the property covered by their respective Notices without condition or delay.

H.    Enter an award allowing Linda and the Proposed Class to recover their attorney's fees, costs, and expenses under 28 U.S.C. § 2412.

I.    Award any further legal and equitable relief the Court may deem just and proper.

DATED: March 7, 2023

Respectfully submitted,

/s/ Robert Belden
Robert M. Belden (DC Bar No. 1035488)
Keith Neely (DC Bar No. 888273735)
Robert Frommer (VA Bar No. 70086)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: rbelden@ij.org
        kneely@ij.org
        rfrommer@ij.org

*Pro hac vice motion to be filed

Counsel for Plaintiff Linda Martin