**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LINDA MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-00618-APM |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS.............................................................................................2

   A. Legal Background ...................................................................................................2

   B. Factual Background.................................................................................................4

   C. Procedural History...................................................................................................6

III. STANDARD OF REVIEW ...........................................................................................7

IV. ARGUMENT .................................................................................................................8

   A. Martin's Claim Is Moot ...........................................................................................8

   B. Martin's Claims Should be Dismissed for Failure to Exhaust Administrative Remedies..11

   C. Martin's Claims Should be Dismissed for Failure to Plausibly Allege a Violation of the Due Process Clause ...........................................................................15

V. CONCLUSION.............................................................................................................18

I. **INTRODUCTION**

This lawsuit arises out of the Federal Government's investigation and seizure of anonymous safe deposit boxes owned and rented out by U.S. Private Vaults ("USPV"), a now-defunct company in Beverley Hills, California. *See* Pl.'s Class Action Compl. for Decl. and Inj. Relief ("Compl.") ¶¶ 4, 16–17, ECF No. 1. In March 2021, the Federal Bureau of Investigation ("FBI")[1] obtained and executed a warrant authorizing the seizure of the facilities of the business, which included the nests of boxes. *Id.* ¶¶ 16–32. After the boxes' contents were inventoried, FBI initiated administrative forfeiture proceedings against the contents of boxes that met a minimum $5,000 threshold. *Id.* ¶ 38. That included box #1810, the cash contents of which the plaintiff in this action, Linda Martin, alleges she owns. *Id.* ¶¶ 41–43.

FBI's seizure of the boxes has been the subject of prior Fourth Amendment litigation that recently proceeded to judgment in favor of FBI and is now pending on appeal in the Ninth Circuit. *See generally Snitko v. United States*, Case No. 2:21-cv-4405 (C.D. Cal.), *appeal docketed*, No. 22-56050 (9th Cir. Apr. 3, 2023). This action does not challenge the seizure itself, but rather the adequacy of the notice FBI gave Martin after she informed FBI of her interest in the cash in box #1810. *See* Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings ("Notice"), Compl. Ex. A, ECF No. 1-2. Martin, both on her own behalf and on behalf of a putative class, alleges that the form's failure to provide the individualized reasons FBI seized her property violates the Due Process Clause of the Fifth Amendment.

This action should be dismissed for multiple reasons. *First*, FBI has since initiated the return of Martin's property, mooting her individual claim. As to the putative class claims, this

---

[1] The other Defendant, Christopher Wray, is sued only in his official capacity as Director of the Federal Bureau of Investigation, and this memorandum refers to both Defendants together as "FBI."

case does not meet any exception to the general rule that putative class claims should be dismissed where no named plaintiff retains a live claim at the time of class certification. *Second*, this action should be dismissed for failure to exhaust administrative remedies: Martin's Complaint here attempts to shortcut FBI's administrative remedy process during the pendency of her petition for remission with FBI and attempts to raise due process arguments she did not previously present to FBI. *Third*, and finally, Martin fails to state a viable due process claim because FBI's notice form squarely satisfies the constitutional requirements for forfeiture notices set out by the Supreme Court in *City of West Covina v. Perkins*, 525 U.S. 234 (1999).

## II.  STATEMENT OF FACTS

### A.  Legal Background

When FBI seizes property for potential administrative forfeiture, it sends interested parties a notice of the initiation of the administrative forfeiture process. *See* 28 C.F.R. § 8.9(b)(1) ("After seizing property subject to administrative forfeiture, the seizing agency, in addition to publishing notice, shall send personal written notice of the seizure to each interested party in a manner reasonably calculated to reach such parties."); *see also* 18 U.S.C. § 983(a)(1). Interested parties then have two primary, nonexclusive options for preventing administrative forfeiture.

*First*, pursuant to federal statute, "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2). The filing of a claim halts the administrative forfeiture process: once a claim is submitted—with exceptions not relevant here—the Government must either "file a complaint for forfeiture" in federal court "or return the property." *Id.* § 983(a)(3)(A). If the Government chooses to file a complaint, initiating the "judicial forfeiture" process, "the burden of proof is on the Government to establish, by a preponderance of the

evidence, that the property is subject to forfeiture." *Id.* §§ 983(a)(1)(A)(ii), (c)(1).

*Second*, pursuant to federal regulations, an interested party may submit "a petition for remission or mitigation of forfeiture" to the agency. 28 C.F.R. § 9.2; *see also* 18 U.S.C.§ 981(d). Unlike claims, petitions do not dispute that a basis for forfeiture exists: "The ruling official shall presume a valid forfeiture and shall not consider whether the evidence is sufficient to support the forfeiture." *Id.* § 9.5(a)(4). "Petitions shall be considered any time after notice until the property has been forfeited," and are decided at the discretion of an agency official. *Id*. §§ 9.3(a), (g). Remission or mitigation can be granted on a variety of grounds, such as where it would "promote the interest of justice." *Id.* § 9.5(b)(1)(i). Interested parties may file "both a claim … and a Petition for Remission or Mitigation." *See Petitions*, U.S. Dep't of Justice, https://www.forfeiture.gov/FilingPetition.htm.

Regardless of whether an interested party files a petition, FBI retains the discretion to terminate the forfeiture process and return the property of its own accord prior to completion of administrative forfeiture. *See, e.g.*, 28 C.F.R. § 8.7(a) (stating circumstances in which "the appropriate FBI Special Agent in Charge … is authorized to release property seized for forfeiture"); *id.* § 8.7(b) ("Further, at any time after seizure and before any claim is referred, such seized property may be released if the appropriate official of the seizing agency determines that there is an innocent party with the right to immediate possession of the property or that the release would be in the best interest of justice or the Government.").

Administrative forfeiture is completed when—if no claim is filed and FBI does not exercise its discretion to return the property—"the appropriate official of the seizing agency … declare[s] the property forfeited," which "shall have the same force and effect as a final decree and order of forfeiture in a federal judicial forfeiture proceeding." 28 C.F.R. § 8.12. After completion of the

3

forfeiture, FBI rules on any petitions. *See id.* § 9.1(a) ("The purpose of this part is to provide a basis for the partial or total remission of forfeiture for individuals who have an interest in the forfeited property.").

### B. Factual Background

As noted above, this lawsuit arises out of the Government's investigation and seizure of USPV's business facilities, including the nests of safe deposit boxes. Compl. ¶¶ 4, 16–17. As the *Snitko* court explained in its trial ruling, "[d]ue to USPV's anonymity, its boxes were used regularly by unsavory characters to store criminal proceeds, a fact both known to and desired by USPV's principals." *Snitko v. United States*, 2022 WL 20016427, at *1 (C.D. Cal. Sept. 29, 2022).[2] "Government investigations of individual USPV boxholders resulted in the execution of numerous federal search warrants on the premises, along with the forfeiture of box contents that were the criminal proceeds of, *inter alia*, ransoms, gambling and prostitution rings, drug operations, and identity theft schemes." *Id.* After "investigation of the business uncovered that USPV's principals were aware of, and indeed actively solicited, the use of their deposit boxes by criminals," *id.* at *2, FBI obtained a warrant to seize USPV's boxes and inventory their contents, Compl. ¶¶ 16–17.

FBI executed the warrant in March 2021. *Id.* ¶ 32. After the boxes' contents were inventoried, FBI initiated administrative forfeiture proceedings against the contents of boxes that met a minimum $5,000 threshold. *Id.* ¶¶ 29, 38. That included box #1810, which Plaintiff Linda

---

[2] In addition to the allegations in the Complaint, which Defendants assume to be true solely for purposes of this motion under Rule 12, the Court may consider judicially noticeable court filings. *See Carr v. Sessions*, 2019 WL 917651, at *1 n.1 (D.D.C. Feb. 25, 2019) (noting, on a motion to dismiss, that "it is well-established that the Court may take judicial notice of judicial opinions related to the current action"); *Tex. Border Coal. v. Napolitano*, 614 F. Supp. 2d 54, 57 (D.D.C. 2009) (similar). The Court may also consider the declaration attached to the Motion to Dismiss for purposes of Defendants' Rule 12(b)(1) argument. *See* Part III, *infra*.

4

Martin alleges to have contained $40,200 in cash. *Id.* ¶¶ 41–43. Box #1810 contained no identifying information as to the ownership of its contents. *See* Declaration of Jessie T. Murray ("Murray Decl.") ¶ 3.

Meanwhile, shortly after the execution of the warrant, Martin's counsel—representing different plaintiffs—filed a class action complaint against FBI in the Central District of California in March 2021, alleging that FBI's seizure of the contents of certain USPV boxes violated the Fourth Amendment. *See Snitko*, 2022 WL 20016427, at *5. The *Snitko* plaintiffs contended "that the Government's search and seizure exceeded the limitations set out in the USPV warrant." *Snitko*, 2022 WL 20016427, at *6. Although the *Snitko* court granted a temporary restraining order halting forfeiture of the *Snitko* plaintiffs' alleged property early in the case, the court rejected the *Snitko* plaintiffs' claims after a bench trial and entered final judgment in favor of FBI in October 2022. *See* Judgment in Favor of Defs., *Snitko v. United States*, Case No. 2:21-cv-4405 (C.D. Cal. Oct. 26, 2022), ECF No. 142; *see also Snitko*, 2022 WL 20016427, at *10–12 (finding that "that the Government did not exceed the bounds of the warrant" and rejecting the plaintiffs' theory that the Government "misled [the magistrate judge] in its warrant affidavit").[3] Given the ongoing litigation, FBI placed all USPV administrative forfeiture proceedings into abeyance—including all related petitions—where they remain at this time. *See* Murray Decl. ¶ 8.

As to the Notice at issue here, Martin represented to FBI in or around May 2021 that she was the owner of the contents of box #1810. *Id.* ¶ 4. In response, FBI sent Martin a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings, which explained that

---

[3] Martin repeats these contentions in her Complaint, *see, e.g.*, Compl. ¶¶ 32–40, but these allegations are wholly irrelevant to her claim in this case that the Notice FBI sent her violated the Fifth Amendment. This is especially so because the *Snitko* court has already rejected those same Fourth Amendment theories.

Martin could file (1) a claim to contest the administrative forfeiture and/or (2) a petition for remission or mitigation.  *See* Compl. Ex. A.  The Notice also provided numerous detailed instructions concerning each option available to Martin.  *Id.* at 2–3.

In response, Martin submitted a petition, but not a claim.  *See* Compl. ¶¶ 56–59.  She does not allege that her petition raised any Due Process Clause issue.

In April 2023, while the USPV administrative forfeiture proceedings were still in abeyance, FBI determined that it would release the contents of box #1810 to Martin—upon verification of ownership—pursuant to its authority under 28 C.F.R. § 8.7.  Murray Decl. ¶ 10.  To verify Martin's ownership of the box, FBI contacted Martin's attorneys to arrange a "key check"—a procedure in which box claimants establish control over the property by producing a key that unlocks the box.  *Id.*  The key check was held in May 2023, and verified Martin's control of box #1810.  *Id.* ¶ 11.  FBI then sent Martin's attorneys an electronic transfer form, which included instructions for providing the information necessary to transfer the funds, and Martin returned the form on June 5.  *Id.* ¶ 12.  Once the Government completes its processing of the form, the funds seized from box #1810 will be electronically transferred to Martin, minus any delinquent debts to the government collected by the Treasury Offset Program under applicable law.  *Id.*; *see generally Treasury Offset Program*, Bureau of the Fiscal Service (Jan. 31, 2023), https://www.fiscal.treasury.gov/top/.  As a consequence of FBI's decision to release the funds, the administrative forfeiture proceeding against those funds has been terminated.  *See* Murray Decl. ¶ 11.

### C.  Procedural History

On March 7, 2023, while her petition was still pending, Martin filed this action against FBI and its Director, Christopher Wray, in his official capacity.  Compl. at 1.  She contends that the Notice did not comport with due process by providing her with sufficient "factual or legal reasons

why the FBI seized and wanted to forfeit [her] property," *id.* ¶ 48, and that—for reasons she does not explain—this caused her not to file a claim, *id.* ¶¶ 65, 130–43.  She also seeks to represent a "nationwide class of individuals who have been, or will be, sent a Notice," and presses an identical class claim.  *Id.* at 1, ¶¶ 144–57.  As to relief, she requests that the Court declare that FBI's Notices violate the Due Process Clause, and either require FBI to send more detailed Notices or else return all seized property.  *Id.* at 29–30.  On April 26, 2023, Martin filed a Motion for Class Certification, which the parties are currently briefing.  *See* ECF No. 11.

### III.     STANDARD OF REVIEW

"On a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims."  *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007).  "In deciding a 12(b)(1) motion, the court need not limit itself to the allegations of the complaint."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  "Rather, the court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case."  *Id.* (alteration and quotation omitted).  When intervening events have mooted a case, dismissal under Rule 12(b)(1) is proper.  *See DuVall v. Postmaster Gen., U.S. Postal Serv.*, 585 F. Supp. 1374, 1378 (D.D.C. 1984) (dismissing "suit as moot pursuant to Federal Rule of Civil Procedure 12(b)(1)").

To survive a motion to dismiss under Rule 12(b)(6), "the facts alleged in the complaint … must be sufficient 'to state a claim for relief that is plausible on its face.'"  *Smith v. Shimizu*, 544 F. Supp. 2d 15, 16 (D.D.C. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Marcus v. Dist. of Columbia*, 646 F. Supp. 2d 58, 60

(D.D.C. 2009) (quoting *Twombly*, 550 U.S. at 555). "Nor must the Court accept 'a legal conclusion couched as a factual allegation,' nor 'naked assertions devoid of further factual enhancement.'" *Lee v. Nat'l Elec. Contractors Assoc.*, 2019 WL 367990, at *1 (D.D.C. Jan. 30, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### IV. ARGUMENT

Rather than permit FBI to reach a final decision about whether to complete its administrative forfeiture process or whether to grant her petition, Martin sought to shortcut that process by filing this action. That choice has created two threshold grounds for dismissal: First, because FBI has decided not to complete forfeiture of Martin's property and is attempting to return it to Martin, Martin's claim is moot. Second, because Martin did not allow FBI to complete its administrative process before filing suit—nor make her due process arguments to FBI through that process—her claim should be dismissed for failure to exhaust her administrative remedies. Beyond these two threshold defects, the Complaint should be dismissed for a third reason: FBI's notice form contains all the information necessary under the Due Process Clause, as set out in the Supreme Court's decision in *City of West Covina v. Perkins*, 525 U.S. 234, 236 (1999).

#### A. Martin's Claim Is Moot

As an initial matter, FBI has exercised its discretion under 28 C.F.R. § 8.7 to release the contents of box #1810 to Martin, and has terminated the administrative forfeiture proceeding. Because this remedies Martin's alleged injury and leaves the Court without the ability to provide her with further relief, her claim is moot and should be dismissed in full under Rule 12(b)(1).

"Article III of the Constitution restricts the federal courts to deciding only actual, ongoing controversies, and a federal court has no power to render advisory opinions or … decide questions that cannot affect the rights of litigants in the case before them." *Nat'l Black Police Ass'n v. Dist.*

8

*of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quotations and alteration omitted).  "Hence, '[e]ven where litigation poses a live controversy when filed, … [this] court [must] refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (alterations in original)).  A case is therefore moot "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief it has sought, or when intervening events make it impossible to grant the prevailing party effective relief." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.C. Cir. 2017) (quotation omitted); *see also Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (similar).

Martin's case is moot under these authorities.  Her core allegation of injury is that "FBI seized and is trying to forfeit [her] $40,200 savings," Compl. ¶ 132, and the remedy she requests is that FBI be either "enjoin[ed] … from proceeding with the forfeiture" or else "order[ed] … to return her property." *Id.* ¶ 143.  Even accepting for purposes of this motion that FBI was "trying to forfeit" the contents of box #1810 at the time the Complaint was filed, FBI has since terminated the forfeiture proceeding and initiated return of the property pursuant to 28 C.F.R. § 8.7.  *See* Murray Decl. ¶¶ 10–12.  The relief Martin requests therefore no longer has any effect on her rights: there are no ongoing forfeiture proceedings for this Court to enjoin, and an order requiring FBI to return the property to Martin would provide no additional relief when FBI is already attempting to do exactly that.  *See LeSesne ex rel. B.F. v. Dist. of Columbia*, 2005 WL 3276205, at *7 (D.D.C. July 26, 2005) (request for "due process meeting was mooted out because [Defendant] was already attempting to set up the very type of meeting Plaintiff was asking" for).

9

That Martin also seeks "a declaratory judgment that the Notice the FBI sent to [her] violates the Due Process Clause," Compl. at 29, does not rescue Martin's claim. As courts in this circuit have consistently concluded, such declaratory judgment requests do not, standing alone, provide any effective remedy for alleged past violations. *See, e.g.*, *Rodriguez v. U.S. Citizenship & Immigr. Serv.*, 605 F. Supp. 2d 142, 146 (D.D.C. 2009) ("A declaratory judgment that the defendant violated plaintiff's rights would not provide any redress for plaintiff's claimed injuries of … past violations of … due process rights. As a pronouncement coupled with no other remedy, it provides no relief for this plaintiff."); *Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 105 (D.D.C. 2010) (request for declaration that agency's "failure to process [plaintiffs'] applications … violates Due Process" was moot because "[n]ow that the [agency] has processed plaintiffs' permit applications … there no longer exists any immediate, actual dispute that warrants declaratory relief"); *Maydak v. United States*, 98 F. App'x 1, 4 (D.C. Cir. 2004) ("Because [plaintiff] cannot show … how his purported past injury could be redressed by a declaratory judgment, we lack jurisdiction over his claims for equitable relief.").

Nor can Martin keep this action alive on the basis of her desire to represent a nationwide class. For starters, no class has been certified, so her claims are subject to dismissal without regard to potential or putative class status. "For every claim, at least one named plaintiff must keep her individual dispute live until certification, or else the class action based on that claim generally becomes moot." *Kang v. Dep't of Homeland Sec.*, 2022 WL 4446385, at *4 (D.D.C. Sept. 23, 2022) (quotation omitted); *see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (quotation omitted)). This case does not fall into the narrow exception to this rule for "inherently transitory" claims that would otherwise consistently

10

evade certification because of "the fleeting nature of the challenged conduct giving rise to the claim." *Kang*, 2022 WL 4446385, at *4; *see Genesis Health Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (explaining that "[t]he 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course"). Martin alleges that FBI has been issuing a version of the allegedly flawed Notice for "the past six years," Compl. ¶ 94, and due process challenges to the adequacy of FBI's notice procedures could be brought in any number of ways. For example, interested parties can file a claim under 18 U.S.C. § 983(a)(2) to halt the administrative forfeiture proceeding, and—in the event FBI does not then return their property—make a their notice argument in the ensuing judicial forfeiture proceeding.[4] And interested parties who do not file a claim under section 983(a)(2), and subsequently have their property administratively forfeited, can move "to set aside forfeiture" under section 983(e) on the basis that FBI did not "provide such party with notice." *Id.* § 983(e)(1)(A). In neither of these scenarios could the interested party's claim become moot because of a property release under 28 C.F.R. § 8.7, as Martin's claim has. As a result, due process claims about FBI's notice procedures are not "inherently transitory."

Because there remains no effectual remedy for the Court to grant to Martin, it should dismiss her Complaint in its entirety as moot pursuant to Rule 12(b)(1).

    **B. Martin's Claims Should be Dismissed for Failure to Exhaust Administrative Remedies**

The complaint should be dismissed at the threshold on an independent basis: Martin failed

---

[4] The *Snitko* court observed that, of the "289 boxes" for which interested parties had identified themselves to FBI as having an ownership interest as of October 2021, "claims have been filed as to 283." *Snitko v. United States*, 2021 WL 6752226, at *7 (C.D. Cal. Oct. 12, 2021).

even to present her due process claim to the FBI in the first instance, and instead rushed to this Court before FBI acted on her administrative petition. Her claim should therefore be dismissed for failure to exhaust. "It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." *Nuclear Energy Inst., Inc. v. Env'l Prot. Agency*, 373 F.3d 1251, 1298 (D.C. Cir. 2004). "Broadly speaking, the doctrine of exhaustion of administrative remedies serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Assoc. of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007); *see also Marine Mammal Conservatory, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413–14 (D.C. Cir. 1998) (observing that "[e]xhaustion even of constitutional claims may promote many of the policies underlying the exhaustion doctrine," including "giving agencies the opportunity to correct their own errors"). In sum, courts generally decline to hear claims brought for the first time where a plaintiff could have presented the claims to the agency itself in an administrative context, but did not. *See, e.g.*, *Flight Attendants*, 493 F.3d at 158 ("Because the unions may petition the agencies directly for the relief they seek in this lawsuit, they have not exhausted their administrative remedies.").

As an initial matter, courts normally dismiss this sort of collateral attack on a forfeiture proceeding for failure to exhaust where the plaintiff "neglected to use the mechanism for obtaining judicial relief provided in the forfeiture statutes." *Malladi Drugs & Pharms., Ltd. v. Tanky*, 552 F.3d 885, 889 (D.C. Cir. 2009). Although the Notice here expressly informed Martin of this judicial mechanism by explaining that, "to contest the forfeiture of this property in United States District Court you must file a claim" under "18 U.S.C. § 983(a)(2)," Compl. Ex. A at 3, Martin failed to do so, *see Malladi*, 552 F.3d at 889 (dismissing action as unexhausted where, after agency "informed Malladi of the procedures and deadlines for filing a claim to contest the forfeiture in

12

court," the plaintiff "chose only to pursue the discretionary petition route" and did not "file a claim" "or … pursue the judicial forfeiture route in any way"). Here, charitably read, the Complaint alleges that Martin was somehow unable to file the claim described in the Notice because the Notice was insufficient, excusing her from exhausting that avenue for relief. Compl. ¶¶ 56–65; *Malladi*, 552 F.3d at 891 ("If, for example, inadequate notice … prevented the plaintiff from being able to raise its objection before the agency, courts may allow the plaintiff to raise the objection for the first time in a collateral attack on the agency action.").

Nevertheless, even if Martin's failure to file a claim is excused on this ground, that is no basis to excuse her failure to raise her due-process argument to FBI through the administrative petition that she concededly did file. *See* Compl. ¶ 56 ("Linda filed her Petition on June 18, 2021."); *Malladi*, 552 F.3d at 890 ("Malladi compounded the exhaustion problem by failing to raise its argument … before the DEA at all, even in the petitions that it did file."). The petition process permits putative property owners to explain to the agency any reason purportedly "justify[ing] the return of the property." Compl. Ex. A at 1. But Martin does not allege that she raised her due-process contentions to FBI—the only description she provides of her petition is that it "stated that she 'did not know of the conduct giving rise to the forfeiture' and was not 'aware of any activity that may have prompted the forfeiture of the property.'" Compl. ¶ 58. Those statements are far from "prominent and clear enough to place the agency on notice," of Martin's claim that the Due Process Clause *required* provision of that information in the Notice. *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1231 (D.C. Cir. 2007); *see also Hornsby v. Thompson*, 2023 WL 196185, at *9 (D.D.C. Jan. 17, 2023) (observing that, because the "purpose of the administrative exhaustion requirement is to … provide the agency with notice and an opportunity to pursue an administrative resolution," it would "contradict the purpose of the

13

exhaustion requirement" to find a claim exhausted when the agency was not "put on notice" of the plaintiff's claim). Instead, Martin's statements most reasonably appeared to go to an ordinary regulatory basis for remission. *See* 28 C.F.R. § 9.1(a) ("The purpose of this part is to provide a basis for the partial or total remission of forfeiture for individuals who have an interest in the forfeited property but who did not participate in, or have knowledge of, the conduct that resulted in the property being subject to forfeiture.").

Where, as here, a plaintiff presses a claim in court that she did not press to the agency, that claim is unexhausted. *See United Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1244 (D.C. Cir. 1997) ("[C]laims not presented to the agency may not be made for the first time to a reviewing court." (quotation omitted)). Indeed, the D.C. Circuit has held as much as to the exact type of due process claim at issue here. *See Colon-Calderon v. DEA*, 218 F. App'x 1, 1 (D.C. Cir. 2007) ("Petitioner Melvin Colon-Calderon's sole contention in this court is that the DEA should have remitted or mitigated the forfeiture of his property because the notice of forfeiture that the agency sent him did not satisfy the requirements of the Due Process Clause. … [P]etitioner never raised this contention before the DEA, and we therefore will not consider it.").

Martin's rush to court manifests failure to exhaust for a second reason. At the time Martin filed her Complaint, her petition remained pending with the FBI, and nowhere does Martin suggest that she is or was unable to present her due process arguments to the FBI in the first instance. For this reason as well, the Court should not countenance Martin's attempt to shortcut this administrative adjudication process midstream by filing this case prematurely. *See, e.g.*, *Nat'l Mining Ass'n v. Off. of Hearings & Appeals*, 777 F. Supp. 2d 164, 172 (D.D.C. 2011) ("[C]ases are routinely dismissed as premature where plaintiffs file actions without waiting for an agency to

reach a final administrative decision."); *Flight Attendants*, 493 F.3d at 158–59 ("[E]xhaustion ensures that … ongoing administrative proceedings are seen through to completion.").

The Court should therefore dismiss Martin's Complaint for failure to exhaust.

### C. Martin's Claims Should be Dismissed for Failure to Plausibly Allege a Violation of the Due Process Clause

Even if Martin's claims could survive these threshold defects—which they cannot—the Court should still grant the motion to dismiss because Martin fails to plausibly allege a due process violation. Binding Supreme Court precedent establishes the minimum content of a forfeiture notice, and FBI's Notice easily satisfies that standard.

The Due Process Clause requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (requiring "notice … of such nature as reasonably to convey the required information" (quoting *Mullane*, 339 U.S. at 314)). There is no mystery as to how this reasonableness test applies to the content of a property seizure notice, as "[t]he Supreme Court has spoken directly to the issue." *Brown v. Dist. of Columbia*, 115 F. Supp. 3d 56, 69 (D.D.C. 2015). Specifically:

> In *City of West Covina v. Perkins*, the Court held that the Constitution does not require the government "to give detailed and specific instructions or advice to owners who seek return of property lawfully seized." It explained that while reasonable steps must be taken to inform the owner "that the property has been taken so [the owner] can pursue available remedies for its return," the government need not provide "individualized notice of … remedies which … are established by published, generally available … statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The [government] need not take other steps to inform him of his options.

15

*Id.* (quoting *West Covina*, 525 U.S. at 236, 240–41).[5]

The Notice FBI sent Martin easily satisfies *West Covina*. The Notice expressly informed Martin "that [her] property has been seized," *West Covina*, 525 U.S. at 241, by stating that "[t]he asset(s) referenced in this notice letter were seized on March 22, 2021 by the FBI at Beverly Hills, California" and that "forfeiture of this property has been initiated pursuant to 18 U.S.C. § 981(a)(1)(C)," Compl. Ex. A at 2. And Martin's remedies are "established by published, generally available … statutes and case law." *West Covina*, 525 U.S. at 236. The process for filing a claim and/or judicial forfeiture is set out in 18 U.S.C. § 983, which is cited multiple times in the Notice. *See id.* § 983(a)(2) (explaining the claim procedure for "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute"); Compl. Ex. A at 2–3 (citing 18 U.S.C. § 983 and its subsections). To the extent Martin argues that she needed the "specific legal or factual reasons" supporting forfeiture to support her claim, Compl. § 73, it is the very filing of a claim that would require "the Government [to] file a complaint for forfeiture" setting out that information, if it wished to proceed with forfeiture. 18 U.S.C. § 983(a)(3)(A). And the process for submitting a petition and/or administrative forfeiture is set out in 28 C.F.R. Parts 8 and 9, which are similarly cited throughout the Notice.[6] *See, e.g.*, 28

---

[5] Martin is incorrect to argue, as she does in her Complaint, that the sufficiency of notice is governed by the multi-factor test "from the Supreme Court decision *Mathews v. Eldridge*, 424 U.S. 319 (1976)," Compl. ¶ 129, rather than the reasonableness test from *Mullane*. *See, e.g.*, *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 278 (D.C. Cir. 1987) (stating that "the constitutional minimum" for "the content of the notice" under the Due Process Clause was "articulated in *Mullane*" and requires only that the notice "is reasonably likely to reach its intended audience" and "must reasonably inform the recipient of the nature of the upcoming proceeding"); *West Covina*, 525 U.S. at 240 (citing *Mullane*, not *Mathews*, for the relevant standard). But the question is ultimately academic: whether the doctrinal fountainhead is characterized as *Mullane* or *Mathews*, the analysis is nevertheless controlled by the Supreme Court's on-point decision in *West Covina* regarding the content of forfeiture notices.

[6] The Notice also directs recipients to the Department of Justice's forfeiture website at www.forfeiture.gov, *see* Compl. Ex. A at 2–3, which in turn links to the relevant statutes and

16

C.F.R. § 9.3 (titled "Petitions in administrative forfeiture cases"); *id.* § 9.5 (discussing the "[c]riteria governing administrative … remission"); Compl. Ex A at 2 (citing "28 C.F.R. Parts 8 and 9").

This district's decision in *Brown*—an analogous due-process challenge to the District of Columbia's forfeiture notice—provides a template for disposition of Martin's claims. In *Brown* too, the plaintiffs "allege[d] that due process requires additional information in the notice, including the underlying factual basis for the seizure … and various details of the forfeiture process." *Brown*, 115 F. Supp. 3d at 69. Applying *West Covina*,[7] the *Brown* court explained why that claim should be dismissed under Rule 12(b)(6): "The notice apprises potential claimants that their property has been seized and is subject to forfeiture, and points them to the statutes and regulations outlining the procedures for challenging the forfeiture. No further notice is required to satisfy due process." *Id.* at 69–70; *see also Juda v. Nerney*, 1198 WL 317474, at *5 (10th Cir. June 16, 1998) (concluding that a "constitutionally adequate notice" does not need to "detail the illegal acts authorizing forfeiture"). So too here. The Court should therefore dismiss Martin's Complaint in full.

---

regulations, and also includes "Frequently Asked Questions" pages that provide additional explanation to questions such as "What's the difference between a claim and a petition?" *FAQs for Online Claims*, Dep't of Justice, https://www.forfeiture.gov/FilingClaimFAQs.htm; *see also FAQs for Online Petitions*, Dep't of Justice, https://www.forfeiture.gov/FilingPetitionFAQs.htm.

[7] *West Covina* involved the Due Process Clause of the Fourteenth Amendment, whereas *Brown* and this case are applications of the Due Process Clause of the Fifth Amendment. "The ultimate legal analysis is the same, however, and cases analyzing States' liability under the Due Process clause of the Fourteenth Amendment can be relied upon to analyze … liability under the Due Process clause of the Fifth Amendment." *Colbert v. Dist. of Columbia*, 5 F. Supp. 3d 44, 50 n.2 (D.D.C. 2013).

## V. CONCLUSION

For the foregoing reasons, FBI respectfully requests that the Court grant its Motion to Dismiss and dismiss Martin's Complaint in its entirety.

Dated: June 8, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

*/s/ Christian S. Daniel*
Christian S. Daniel (DC Bar No. 1600226)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Rm. 11004
Washington, D.C. 20005
Tel: (202) 514-5838
Email: christian.s.daniel@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, a copy of the foregoing document was filed electronically with the Clerk of this Court. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Christian S. Daniel*
Christian S. Daniel